IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| RONNIE WAYNE BROWN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:12-05042-DGK-SSA |
| CAROLYN W. COLVIN,[1] Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Ronnie Wayne Brown ("Brown") seeks judicial review of the Commissioner of Social Security's denial of his applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq.* Plaintiff alleges he became disabled on February 28, 2007 because of epilepsy. The administrative law judge ("ALJ") found that while he suffered from epilepsy, he retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the exception that he could not perform work which exposed him to dangerous machinery or unprotected heights.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

Plaintiff filed his application for disability insurance benefits and SSI benefits on December 19, 2008. The Commissioner denied his applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing on August 2, 2010, and on August 27, 2010 issued his decision holding Plaintiff was not disabled as defined in the Act. The Appeals Council denied Plaintiff's request for review on February 1, 2012, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

**Analysis**

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled,

2

Case 3:12-cv-05042-DGK   Document 13   Filed 05/22/13   Page 2 of 7

that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred by: (1) not giving his treating physician's opinion more weight; (2) not basing his RFC finding upon substantial evidence; and (3) improperly evaluating his seizure disorder under listings 11.02 and 11.03.

**A.      The ALJ properly weighed Dr. Wool's opinion.**

Plaintiff first argues that the ALJ should have given the opinion of his treating physician, Dr. Jeffrey Wool, M.D., more weight.

As the ALJ noted, Plaintiff saw Dr. Wool once every three months for two years. R. at 42, 211-23. Dr. Wool's treatment of Plaintiff consisted of prescribing anti-seizure medication. R. at 223. Dr. Wool's treatment record consists of six pages of handwritten treatment notes with no attached objective clinical evidence. R. at 41-42, 211-223. He also filled out a perfunctory seizure questionnaire which concludes—without explanation—that Plaintiff is "unable to work," and a seven sentence letter claiming that "I see many people who have or are in the process of

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

3

obtaining disability. Ronnie is one of the most deserving persons that I have encountered in my medical practice." R. at 217, 223.

It is well-established that

> a treating physician's opinion is generally entitled to substantial weight; however, such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion. Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence. When deciding how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations. When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so.

*Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (internal quotations and citations omitted).

In the present case, the ALJ gave good reasons for discounting Dr. Wool's opinion. The ALJ noted that "[t]reatment records show an irregular pattern of visits and contain limited information about the nature of the treating relationship, and the clinical support for the diagnosis appears mostly based on the subjective information given the patient." R. at 42. Although Dr. Wool diagnosed Plaintiff with epilepsy, "there is no evidence in the record or his treatment notes that demonstrates an objective finding to support that diagnosis." R. at 42. In fact, the objective evidence, a CT scan performed on January 15, 2010, showed nothing which indicated epilepsy. R. at 2009. Dr. Wool's diagnosis is mostly based on the subjective information given by the Plaintiff which the ALJ found was not credible. The ALJ's observations are well-supported by the record. R. at 211-23. Consequently, the ALJ did not err in giving Dr. Wool's opinion little weight.

**B.     The RFC finding is based upon substantial evidence.**

Next, Plaintiff contends the ALJ erred in formulating Plaintiff's RFC.  Plaintiff argues the RFC is not supported by the record since it was based on a consultative examination performed by Dr. Ahmed Robbie, M.D., and Dr. Robbie never issued any opinion regarding Plaintiff's functioning.  Plaintiff also complains the RFC is flawed because it did not include limitations for Plaintiff's alleged anxiety impairment or hand tremors.  Finally, Plaintiff suggests Dr. Robbie's opinion is not substantial evidence upon which the ALJ could base his RFC determination.

As a threshold matter, Dr. Robbie did make several findings concerning Plaintiff's functional abilities.  He found Plaintiff could sit, stand, and hold objects, and that he could walk and perform fine movements without any impairment.  R. at 187.  The only limitation Dr. Robbie found was that Plaintiff had "subtle difficulty with tandem walking."  Id.  So there is no merit to this claim.

There is also no merit to Plaintiff's argument that the ALJ erred by not including any limitations for Plaintiff's anxiety or hand tremors.  The Court notes Plaintiff did not assert anxiety as a ground for disability nor is there any evidence in the record demonstrating anxiety impaired his ability to work.  R. at 141.  Indeed, the discussion of anxiety in the record stems from Dr. Robbie's assessment that Plaintiff's shaking appeared to be related to anxiety, not epileptic seizures.  R. at 187.  Similarly, nothing in the record indicates Plaintiff's hand tremors occurred frequently or were sufficiently severe that they limited his ability to work beyond restricting him from working with dangerous machinery or at unprotected heights.  Since there is no indication that anxiety or tremors limited Plaintiff's ability to work beyond the limits the ALJ already recognized, the ALJ did not err by not imposing additional limitations.

As for Plaintiff's last argument, the regulations do not require that an RFC finding be based on the medical opinion of a treating physician. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). On the contrary, an ALJ may rely on the opinion of a non-treating physician where, as here, the record does not contain any credible opinion evidence from a treating physician. *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006).

**C.     The ALJ properly evaluated Plaintiff's seizure disorder under the listings.**

Finally, Plaintiff contends the ALJ improperly evaluated Plaintiff's seizure disorder under Listing 11.02 for convulsive epilepsy and 11.03 for non-convulsive epilepsy by failing to cite any evidence supporting his determination.

The ALJ properly evaluated Plaintiff's seizure disorder because the ALJ rightly noted the *lack* of evidence demonstrating that Plaintiff met either listing. A plaintiff bears the burden of establishing that a condition meets or equals a listed impairment. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). To qualify under the above listings for epilepsy, the claimant must provide "at least one detailed description of a typical seizure," including "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.00A. Additionally, "[t]he reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information." *Id*. "When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels." *Id.* Social Security Ruling 87-6 also provides that a claimant must present documentation of at least one

6

electroencephalography ("EEG") test. Here Dr. Wool's treatment notes, seizure questionnaire, and letter do not provide any detailed description of a typical seizure, nor do they provide any information about serum drug levels. Plaintiff also failed to include in the record any EEGs. Because Plaintiff did not provide the requisite evidence showing he met either listing's specified criteria, the ALJ rightly found Plaintiff did not meet either listing.

## Conclusion

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   May 22, 2013                    /s/ Greg Kays
                                        GREG KAYS, JUDGE
                                        UNITED STATES DISTRICT COURT